UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Matthew L. Fornshell, | ) | CASE NO. 1:10 CV 2040 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| FirstMerit Bank, N.A., | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon Plaintiff's Motion to Remand Lawsuit (Doc. 5). This case arises out of an alleged ponzi scheme. For the reasons that follow, the motion is GRANTED.

**FACTS**

Plaintiff, Matthew Fornshell, is a court-appointed receiver for the Schneiders and various companies they owned or controlled. The Schneiders were involved in a ponzi scheme whereby they sold promissory notes to investors and made payments on the notes with the proceeds from the sale of new notes. Defendant, FirstMerit Bank, is the bank the Schneiders used in executing

1

the ponzi scheme.

Plaintiff initially filed this lawsuit in state court. Defendant removed the matter on the grounds that the National Bank Act completely preempts plaintiff's state law claims. Plaintiff moved to remand the matter to state court and this Court granted plaintiff's motion. For over three and one half years, the matter proceeded in state court. Defendant filed a motion for summary judgment in state court and plaintiff opposed the motion. After receiving plaintiff's opposition brief, defendant again filed a notice of removal seeking to invoke this Court's jurisdiction. According to defendant, the brief in opposition makes clear that federal jurisdiction exists. Plaintiff moves to remand this matter to state court and defendant opposes the motion.

**ANALYSIS**

Defendant argues that plaintiff's brief in opposition makes clear that federal jurisdiction exists under the Bank Secrecy Act, 31 U.S.C. § 5311, *et seq*. and the federal money laundering statute, 18 U.S.C. § 1957. According to defendant, plaintiff asserted a claim for aiding and abetting fraud, as well as a state RICO claim. Defendant argues that a resolution of these state law claims involves application of federal law and, as such, "arising under" jurisdiction exists. Plaintiff disputes defendant's assertion.

> To determine whether [a] claim arises under federal law, we examine the 'well pleaded' allegations of the complaint and ignore potential defenses. There are exceptions to the well-pleaded complaint rule. One exception is the artful-pleading doctrine: plaintiffs may not avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims. A related exception is the complete-preemption doctrine: removal is proper when a federal statute wholly displaces the state-law cause of action through complete pre-emption. A third exception is the substantial-federal-question doctrine, which applies where the vindication of a right under state law necessarily turns on some construction of federal law. Thus, under limited circumstances, a defendant may force a plaintiff into federal court despite the plaintiff's desire to proceed in state court.

*Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007)(all internal citations,

quotations, and edits omitted).

Defendant argues that federal jurisdiction exists under the third exception, *i.e.*, the "vindication of a right under state law necessarily turns on some construction of federal law." The Supreme Court cautioned that no "single, precise, all-embracing test exists for determining "jurisdiction over federal issues embedded in state-law claims between nondiverse parties." *Grable & Sons Metal Prods., Inc. V. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Rather, courts should evaluate whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id*. While the absence of a federal private right of action is not dispositive, it is evidence of whether Congress intended to open claims to a federal forum. *Id*. In addition, courts must be mindful that "state courts are generally presumed competent to interpret and apply federal law." *Mikulski*, 501 F.3d at 560.

  1. Bank Secrecy Act

Plaintiff does not allege that the Bank Secrecy Act ("BSA") contains a private right of action. Rather, plaintiff's complaint contains a state law claim for aiding and abetting fraud. According to defendant, plaintiff's claim "arises" under federal law because plaintiff relies on alleged violations of the BSA to prove the "knowledge" element of an aiding and abetting fraud claim.

Upon review, the Court finds that federal jurisdiction is lacking. As an initial matter, the Court notes that the BSA contains no private cause of action, which strongly evidences Congress's intent to limit federal jurisdiction over "claims" involving the BSA. Federal

3

jurisdiction may nonetheless lie if resolution of the state law claim raises a federal issue that is "actually disputed and substantial." Here, the Court finds that plaintiff's aiding and abetting fraud claim does not raise a federal issue that is either "actually disputed" or "substantial." Defendant argues that in order to succeed on the aiding and abetting fraud claim, plaintiff must establish "knowledge." According to defendant, plaintiff's brief in opposition to defendant's summary judgment motion demonstrates that plaintiff intends to establish knowledge by relying on defendant's alleged violations of the BSA. Plaintiff's brief points, in part, to the following as evidence of knowledge,

- The Schneiders' titled their account as the "Mortgage Escrow Account" even though they (apparently) did not intend to use it as an escrow account;

- The Mortgage Escrow Account appeared repeatedly on Suspect Activity Reports for "excessive growth in average balance;"

- The Mortgage Escrow Account appeared frequently (sometimes almost daily) on Back Office Suspect Reports; and

- The Mortgage Escrow Account appeared regularly on Carreker Deposit Fraud Suspect Reports.

In support of its argument, defendant claims that the OCC, which is the federal agency in charge of ensuring compliance with the BSA, "has a direct interest in having a federal forum decide what its national bank regulations and guidance under the BSA mean and whether [defendant's] conduct here violated those regulations and guidance." Defendant also argues that the OCC did not require banks to undertake the types of customer monitoring activities that are at issue. Plaintiff responds that a resolution of the aiding and abetting fraud claim does not require a finding that defendant violated the BSA. Plaintiff points out that no negligence claim exists and, as such, plaintiff is not relying on the BSA to establish the standard of care.

4

Upon review, this Court agrees with plaintiff. In the summary judgment briefing, plaintiff identifies banking activity that he intends to rely on in order to establish that defendant knew of the fraud committed by the Schneiders. To succeed with his claim, plaintiff need not establish that this activity also violates the BSA. Rather, a trier of fact might conclude that the activity establishes knowledge of the fraud irrespective of whether the conduct also amounts to a violation of the BSA.[1] Because the BSA may not be implicated in the analysis, the Court finds that there is no federal issue that is "actually disputed."

Even if the BSA created an "actually disputed" federal issue, any such issue would not be "substantial."

> "The Supreme Court has identified four aspects of a case or an issue that affect the substantiality of the federal interest in that case or issue: (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

*Mikulski*, 501 F.3d at 560.

Defendant argues that the OCC has a strong interest in having a federal forum analyze the BSA and its accompanying regulations. The Court finds that this interest is insufficient. In *Mikulski*, the Sixth Circuit concluded that no substantial federal issue existed because no federal agency was a party to the dispute and the suit did not involve a "question of whether a government agency has complied with a statute or regulation." *Mikulski*, 501 F.3d at 570. The

---

[1] This Court is careful to note that it is not opining as to whether the banking activity identified by plaintiff is sufficient to create a question of fact as to defendant's knowledge of the Schneider's fraud. Rather, the Court simply notes that a violation of federal law need not be established in order to analyze the claim.

5

Court further noted that the government has only a "limited interest in private tort or contract litigation over the private duties" at issue in the agency's regulations.  *Id*.  *Mikulski*'s analysis is directly on point here.  The OCC is not a party to this lawsuit and there is no issue as to whether a governmental agency complied with its own regulations.  This action involves tort claims between private parties and, as such, the OCC's interest in the outcome of the litigation is limited.  With regard to the second and third factors, the Court finds that the federal interest in this case is not "important" and will not resolve the claim.  Defendant points to no specific federal issue (other than a generalized reference to BSA requirements) that any court would need to address.  Nor will a resolution of any such "issue" resolve the claim.  In the event the issue were resolved in favor of the plaintiff, other elements must be demonstrated in order for plaintiff to prevail.  *See, id.* (noting that, while a resolution of the issue in defendant's favor would resolve the matter, plaintiff would need to establish other elements if the federal issue were resolved in its favor).  Finally, the Court finds that a resolution of any "issue" will not be controlling over numerous other cases.  It is difficult to assess this factor because defendant fails to identify any particular issue in this case.  Certainly a general discussion of the BSA will not be controlling over numerous other cases.  Accordingly, the Court finds that even if an "actually disputed" federal issue exists, the federal issue is not "substantial."  As such, federal jurisdiction does not "arise under" the BSA.[2]

    2.       18 U.S.C. § 1957 (money laundering)

Defendant also argues that federal jurisdiction exists because plaintiff's state law RICO

---

[2] Having concluded that federal jurisdiction does not exist, the Court need not reach whether defendant timely filed the notice of removal.

claim relies on 18 U.S.C. § 1957 as a predicate act.  According to defendant, state law requires at least two separate predicate acts and plaintiff may not rely on multiple instances of the same predicate act to support his claim.  Thus, a resolution of plaintiff's state law RICO claim necessarily involves an application of the federal money laundering statute.  In response, plaintiff argues that Ohio law does not require that he prove the violation of two separate criminal statutes in order for his claim to succeed.  Rather, plaintiff claims that multiple violations of the same statute are sufficient.  One of the criminal statutes plaintiff uses to support his state law RICO claim is O.R.C. § 2913.15.  Plaintiff argues that, because multiple violations of this statute are

 sufficient to support his state law RICO claim, this case does not "necessarily" involve a federal issue.

Upon review, the Court agrees with plaintiff.  Defendant cites two cases in support of its position that plaintiff may not rely on multiple violations of the same state statute to establish predicate acts.[3]  The Court reviewed each case.  Neither indicates that the two predicate acts must arise under separate statutes.  The Court's own research reveals no such requirement.[4]  Any

---

[3]    *Kondrat v. Morris*, 692 N.E.2d 246, 253 (Ohio Ct. App. 1997) and Morrow v. *Reminger & Reminger Co.*, 915 N.E.2d 696 (Ohio Ct. App. 2009).

[4]    In its surreply brief, defendant argues that it is not claiming that the violation of two separate statutes is required.  Rather, defendant appears to claim that it challenges the existence of a pattern.  The argument defendant makes in its surreply brief actually strengthens this Court's conclusion.  Whether sufficient activities exist to establish a "pattern" of activity is a matter of state law.  If plaintiff could establish a pattern wholly under state law, there is no federal issue "actually in dispute."

7

doubt as to the propriety of this Court's jurisdiction must be construed against defendant.  As such, this Court concludes, solely for purposes of ascertaining the existence of federal jurisdiction, that plaintiff need not establish a violation of the money laundering statute in order to succeed with a state RICO claim.  Because plaintiff need not establish a violation of the federal money laundering statute, there is no federal issue that must "necessarily" be resolved.

Assuming *arguendo* that a resolution of plaintiff's state law RICO claim involves a federal issue that is "actually disputed," defendant fails to establish that the federal interest in its resolution is "substantial."  This Court previously outlined the *Mikulski* factors and concludes that, for the same reasons articulated above, there is no substantial federal interest in the outcome of the issue.  Again, no federal agency is a party to this lawsuit and the claim at issue is a state tort claim between private parties.  In addition, defendant fails to articulate any "important" federal interest that would resolve the case.  Again, even if the state court were required to apply the federal money laundering statute, it appears to be a run-of-the mill application of the statute.  Defendant fails to identify any specific issue that the state court would have to address.  Moreover, as with plaintiff's aiding and abetting fraud claim, a resolution of the issue in plaintiff's favor would not resolve the claim.   Nor is there any basis to believe that a resolution of any federal issue would control the outcome of numerous cases.  These cases are fact-specific and defendant fails to point to an issue that, if resolved, would be universally applicable to other cases.

Defendant relies on *Ayers v. General Motors Corp.*, 234 F.3d 514 (11th Cir. 2000), in support of its position.  In *Ayers*, the plaintiff filed a state law RICO claim and alleged violations of the federal mail and wire fraud statutes as predicate acts.  The court concluded that the only

way that defendant could be liable under the mail and wire fraud statute is if the National Traffic and Motor Vehicle Safety Act, a federal statute, imposed upon defendants a duty of disclosure. If no such duty existed, the state-law RICO claim would fail. Defendant attempts to analogize *Ayers* to the instant case. *Ayers*, however, is easily distinguishable. *Ayres* involved a specific question of federal law, *i.e.*, whether a duty imposed under the National Traffic and Motor Vehicle Safety Act is sufficient to satisfy the duty element of a federal wire or mail fraud claim. Defendant points to no similar issue of law. Rather, defendant simply points out that defendant relies on violations of federal securities law in order to satisfy the "specified unlawful activity" element of the money laundering statute.[5] As set forth above, this analysis involves a straightforward application of general federal law to the specific facts of this case. Moreover, even if *Ayers* could be analogized to this case, it is an Eleventh Circuit case and was decided nearly seven years before the Sixth Circuit issued *Mikulski*. As such, none of the controlling *Mikulski* factors are addressed by the court in *Ayers*. For these reasons, the Court rejects defendant's reliance on that case.

## **CONCLUSION**

For the foregoing reasons, the Plaintiff's Motion to Remand Lawsuit is GRANTED. The Court finds that plaintiff is not entitled to an award of attorney's fees incurred in connection with this motion.

IT IS SO ORDERED.

---

[5] Defendant also argues that plaintiff must prove a violation of the BSA in order to establish the intent element of the federal money laundering statute. For the reasons stated in this Court's discussion of the BSA, the Court finds that plaintiff need not establish a violation of the BSA in order to prove knowledge.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 11/23/10